559 S.E.2d 36

Fred RUSSELL, Jr., and Rebecca Russell, Plaintiffs below, Appellants,

v.

BUSH & BURCHETT, INC., a Kentucky corporation; Joe Burchett, an individual; Manitowac Cranes, Inc., a Wisconsin corporation; Essex Crane Rental Corporation, a New York corporation; and West Virginia Department of Transportation, Division of Highways, a public agency of the State of West Virginia, Defendants below, Appellees.

State Board of Risk and Insurance Management, Appellee.

Fred Russell, Jr., and Rebecca Russell, Plaintiffs below, Appellants,

v.

Bush & Burchett, Inc., a Kentucky corporation; Joe Burchett, an individual; Manitowac Cranes, Inc., a Wisconsin corporation; Essex Crane Rental Corporation, a New York corporation; and West Virginia Department of Transportation, Division of Highways, a public agency of the State of West Virginia, Defendants below, Appellees.

State Board of Risk and Insurance Management, Appellee.

Nos. 28398, 28720.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 3, 2001.

Decided Nov. 28, 2001.

Lori Simpson Davis, Esq., Charleston, for Appellants.

Theresa Kirk, Esq., Gary E. Pullin, Esq., Pullin, Knopf, Fowler & Flanagan, Charleston, for West Virginia Department of Transportation, Division of Highways.

Scott W. Andrews, Esq., Offutt, Fisher & Nord, Huntington, for Bush & Burchett, Inc.

Darrell V. McGraw, Jr., Attorney General, Robert D. Williams, Assistant Attorney General, Charleston, for State Board of Risk and Insurance Management.

STARCHER, Justice.

In the instant case, we reinstate a "deliberate intention" personal injury claim that was made by an employee of a bridge construction company against his employer. The employee was injured while working on the "Kentucky end" of a West Virginia Division of Highways bridge construction project on the Tug Fork River; the circuit court dismissed the claim. We also reverse the circuit court's decision to dismiss the Division of Highways as a defendant in the same case.[1]

## I.

### Facts & Background

The appellants are Fred Russell and Rebecca Russell, husband and wife. In November of 1996, Mr. Russell, a Kentucky resident, was working for the appellee, Bush & Burchett, Inc., a Kentucky corporation that is owned by the appellee, Joe Burchett. (We will refer to both Mr. Burchett and his company as "B & B.")

B & B had contracted with the appellee, the West Virginia Department of Transportation, Division of Highways ("DOH"), a State agency, to build a bridge for the DOH across the Tug Fork River from Williamson, West Virginia to South Williamson, Kentucky.

---

**1.** Two separate appeals are consolidated in the instant case; we omit separate delineation of the issues involved in each appeal.

While Mr. Russell was working for B & B on the DOH's Tug Fork bridge project, the cable of a crane released, causing an 800-pound "headache ball" to fall and strike Mr. Russell on his head and shoulder. He was knocked off the bridge scaffolding and fell approximately 30 feet onto the rocks and land below; he suffered serious and permanent injuries from the fall.

Mr. and Mrs. Russell filed suit in the Circuit Court of Kanawha County against several defendants, including B & B and the DOH. The Russells based their claim against B & B on the "deliberate intention" provisions of our workers' compensation law, *W.Va.Code*, 23–4–2(c) [1994].[2]

The Russells based their claim against the DOH on the theory that the DOH was negligent in selecting and retaining B & B as a bridge contractor—because B & B, according to the Russells, allegedly operated unsafely and had a significant history of injuries to workers.

Both the DOH and B & B asked the circuit court to dismiss them as defendants. B & B argued before the circuit court (and it was not disputed by the Russells) that the specif-ic location or *situs* of the accident where Mr. Russell was struck by the headache ball was on the "Kentucky end" of the Tug Fork bridge, and that Mr. Russell landed on the ground in Kentucky. (The parties stipulate that the West Virginia/Kentucky state line is in the middle of the river.) Therefore, argued B & B, West Virginia law, including the provisions of *W. Va.Code*, 23–4–2(c) [1994], does not apply to Mr. Russell's accident.

Specifically, B & B contended that the choice-of-laws doctrine of *lex loci delicti* (the law of the *situs* of the injury applies) was applicable and dispositive: if Mr. Russell was injured in Kentucky, Kentucky law applies—and the Russells may not make a deliberate intention claim against B & B under *W.Va. Code*, 23–4–2(c) [1994]. The circuit court, in an order dated February 17, 2000, agreed with B & B's argument and dismissed the Russells' claim against B & B.

The DOH, in support of its request for dismissal, made two arguments. First, the DOH argued that the provisions of *West Virginia Constitution*, Article VI, Section 35 [3] barred the Russells from bringing suit against the DOH because exclusionary language in the insurance policy provided for

**2.** *W.Va.Code*, 23–4–2(c) [1994] allows a legal claim against an employer for a work-related death or injury if:

(i) It is proved that such employer or person against whom liability is asserted acted with a consciously, subjectively and deliberately formed intention to produce the specific result of injury or death to an employee. This standard requires a showing of an actual, specific intent and may not be satisfied by allegation or proof of (A) conduct which produces a result that was not specifically intended; (B) conduct which constitutes negligence, no matter how gross or aggravated; or (C) willful, wanton or reckless misconduct; or

(ii) The trier of fact determines, either through specific findings of fact made by the court in a trial without a jury, or through special interrogatories to the jury in a jury trial, that all of the following facts are proven:

(A) That a specific unsafe working condition existed in the workplace which presented a high degree of risk and a strong probability of serious injury or death;

(B) That the employer had a subjective realization and an appreciation of the existence of such specific unsafe working condition and of the high degree of risk and the strong probability of serious injury or death presented by such specific unsafe working condition;

(C) That such specific unsafe working condition was a violation of a state or federal safety statute, rule or regulation, whether cited or not, or of a commonly accepted and well-known safety standard within the industry or business of such employer, which statute, rule, regulation or standard was specifically applicable to the particular work and working condition involved, as contrasted with a statute, rule, regulation or standard generally requiring safe workplaces, equipment or working conditions;

(D) That notwithstanding the existence of the facts set forth in subparagraphs (A) through (C) hereof, such employer nevertheless thereafter exposed an employee to such specific unsafe working condition intentionally; and

(E) That such employee so exposed suffered serious injury or death as a direct and proximate result of such specific unsafe working condition.

**3.** The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.

*West Virginia Constitution*, Article VI, Section 35.

the DOH by the state Board of Insurance [Risk and Insurance Management] ("BRIM") bars claims relating to bridges. Second, the DOH argued that it has no selection or retention duty to with respect to a contractor's worker-safety record or performance; and that even if the DOH did have such a worker-safety-related duty, a breach of that duty could not lead to the DOH having liability in connection with an injury to a worker on a DOH-funded project.

The circuit court did not agree with the DOH's first, "exclusionary language," argument. However, the circuit court did agree with the DOH's second, "no duty" argument. Therefore the circuit court dismissed the Russells' claim against the DOH, in an order dated June 1, 2000.

Mr. and Mrs. Russell have appealed the circuit court's dismissal of B & B and the DOH. The DOH has cross-appealed the circuit court's decision that exclusionary language did not bar the Russells' suit. For the reasons discussed below, we vacate the circuit court's dismissals of the DOH and B & B and we remand the case for further proceedings consistent with this opinion.

## II.

### Standard of Review

■ The circuit court's rulings regarding the DOH and B & B were rulings granting or denying summary judgment. We review a circuit court's ruling granting a motion for summary judgment de novo. Syllabus Point 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

## III.

### Discussion

### A.

### B & B

The circuit court concluded that the doctrine of *lex loci delicti* precluded the Russells

from invoking West Virginia law to make a "deliberate intention" claim against B & B under *W.Va.Code*, 23-4-2(c) [1994].

■ However, our cases are clear that whether a deliberate intention cause of action under *W.Va.Code*, 23-4-2(c) [1994] may be brought against an employer because of an injury that occurred in a *situs* other than West Virginia is not determined by the doctrine of *lex loci delicti*, but under the principles of comity. *See Bell v. Vecellio & Grogan*, 197 W.Va. 138, 144–145, 475 S.E.2d 138, 144–145 (1996) (the fact that an accident occurred in Maryland was not dispositive on whether a "deliberate intention" suit would be permitted); *Pasquale v. Ohio Power Co.*, 187 W.Va. 292, 302 n. 15, 418 S.E.2d 738, 748 n. 15 (1992) ("We believe there is more flexibility under comity principles.") [4]

■ In Syllabus Point 1 of *Pasquale v. Ohio Power Co., supra,* we stated:

Comity is a court-created doctrine through which the forum court *may* give the laws or similar rights accorded by another state effect in the litigation in the forum state. Comity is a flexible doctrine and rests on several principles. One is legal harmony and uniformity among the co-equal states. A second, grounded on essential fairness, is that the rights and expectations of a party who has relied on foreign law should be honored by the forum state. Finally, and perhaps most important, the forum court must ask itself whether these rights are compatible with its own laws and public policy. [emphasis added].

■ In the instant case, the DOH required in its bidding process—and B & B contractually promised to the DOH in that process—that all Tug Fork bridge project workers would be covered by the West Virginia Workers' Compensation Fund and Act.[5] This requirement by the DOH strongly evidences an affirmative public policy of this

---

4. Courts sometimes use the term "comity" as a shorthand term to explain why a forum court is deferring to the law or rulings of another jurisdiction. However, "comity" is used in Syllabus Point 1 of *Pasquale* in its meaning as a choice-of-laws analytic approach that may lead to either applying *or* declining to apply the law of another jurisdiction.

5. *See also* the discussion of the DOH's responsibilities at III.B. *infra*.

State, clearly communicated to B & B, that all persons working on the Tug Fork bridge project would have all of the benefits of West Virginia workers' compensation law, including its "deliberate intention" provisions. "[A]ll employees covered by the West Virginia Workers' Compensation Act . . . are subject to every provision of the workers' compensation chapter and are entitled to all benefits and privileges under the Act, including the right to file a direct deliberate intention cause of action against an employer pursuant to *W.Va.Code,* 23–4–2(c)(2)(I)–(ii)." *Bell v. Vecellio & Grogan, Inc.,* 197 W.Va. 138, 144, 475 S.E.2d 138, 144 (1996).[6]

■ We hold, based on the foregoing, that there is a public policy that the full range of rights provided to workers under West Virginia law should protect and be available to workers on a West Virginia state-funded construction project. B & B was unquestionably aware of and contractually agreed to comply with this policy. No countervailing factors weigh heavily against applying West Virginia law in this circumstance. Accordingly, the pertinent factors in a comity analysis weigh conclusively on behalf of the Russells being authorized to bring a deliberate intention action against B & B under West Virginia law.

For the foregoing reasons, we reverse the circuit court's grant of summary judgment to B & B.

## B.

### The DOH

We turn first to the circuit court's determination that *W.Va. Const.,* Art. VI, Sec. 35 did not bar the Russells' claim against the DOH, a determination that the DOH has appealed.

In the instant case, consistent with Syllabus Point 2 of *Pittsburgh Elevator Co. v. West Virginia Bd. of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983), the Russells asserted in their claim against the DOH that the Russells sought only recovery up to the limits of the DOH's BRIM liability insurance policy.[7]

The BRIM policy contained the following exclusionary language:

Insurance afforded under this policy does not apply to any claim resulting from the ownership, design, selection, installation, maintenance, location, supervision, operation, construction, use or control of . . . bridges . . . or related or similar activities or things . . . .

6. *W.Va.Code,* 23–2–1(c) [1993] and regulations of the Fund at 85 C.S.R. 9.6.9 provide a permissible exception for temporary employees—who work in West Virginia for less than 90 days and who are covered by another state's workers' compensation scheme. Assuming *arguendo* that this exception could apply to a person performing work on the Tug Fork bridge project, given the specific terms of the DOH's contract with B & B, the record shows that Mr. Russell had worked for B & B in West Virginia for much longer than 90 days during several years preceding Mr. Russell's injury. Mr. Russell's employment on the West Virginia bridge project was not "temporary" in the sense contemplated by the aforesaid regulations. Mr. Russell did, after his accident, receive some workers' compensation benefits under Kentucky law, apparently because B & B submitted a claim to B & B's Kentucky workers' compensation insurer; but, like the *situs* of the accident, this fact is not dispositive in a comity analysis.

7. We recognized in Syllabus Point 1 (in part) of *Eggleston v. West Virginia Dept. of Highways,* 189 W.Va. 230, 429 S.E.2d 636 (1993) that:

*W.Va.Code,* 29–12–5(a) (1986) . . . requires the State Board of Risk and Insurance Man-

agement to purchase or contract for insurance and requires that such insurance policy "shall provide that the insurer shall be barred and estopped from relying upon [*West Virginia Constitution,* Article VI, Section 35.]"

This Court determined following the initial oral argument of this case that it was appropriate to make BRIM a party to this litigation, to reflect our understanding that BRIM, and not the DOH, is the agency that delineates the scope of the coverage that is authorized by *W.Va.Code,* 29–12–5(a) [1993]. However, notwithstanding the statutory role of BRIM, it is axiomatic that the ultimate duty of interpreting and applying the provisions of *West Virginia Constitution,* Article VI, Section 35 lies with this Court. The cases collected at *University of West Virginia Bd. of Trustees ex rel. West Virginia University v. Graf,* 205 W.Va. 118, 122–123, 516 S.E.2d 741, 745–746 (1998) (*per curiam*) indicate that establishing the applicability and parameters of *West Virginia Constitution,* Article VI, Section 35 in a given case involves the consideration of a range of factors, including: other constitutional provisions; principles of *stare decisis;* expressions and conduct by the legislative and executive branches; principles of equity; and the inherent duties and powers of the judicial branch.

The DOH argued to the circuit court that this "bridge related" language excludes the Russells' claim from the BRIM policy coverage. The Russells responded by arguing that the "bridge related" exclusionary language does not apply to the Russells' claim against the DOH—because the Russells' liability theory against DOH is based on allegedly negligent selection and retention conduct by the DOH, not bridge construction, installation, etc.

Faced with these competing positions, the circuit court adopted the position advanced by the Russells. The circuit court therefore denied the DOH's motion to dismiss the Russells' claim against the DOH as being entirely barred by *W.Va. Const.*, Art. VI, Sec. 35; and it is this decision that the DOH has cross-appealed and that we review.

■■■ The principles of interpretation, construction, and application that this Court brings to exclusionary language in insurance policies are well-settled, and were stated in the following Syllabus Points of *National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 177 W.Va. 734, 356 S.E.2d 488 (1987):

> 5. Where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated.
>
> 7. An insurance company seeking to avoid liability through the operation of an exclusion has the burden of proving the facts necessary to the operation of that exclusion.
>
> 8. With respect to insurance contracts, the doctrine of reasonable expectations is that the objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations.
>
> 9. Where ambiguous policy provisions would largely nullify the purpose of indemnifying the insured, the application of those provisions will be severely restricted.
>
> 10. An insurer wishing to avoid liability on a policy purporting to give general or comprehensive coverage must make exclusionary clauses conspicuous, plain, and clear, placing them in such a fashion as to make obvious their relationship to other policy terms, and must bring such provisions to the attention of the insured.[8]

■■■ We stated in Syllabus Point 2 of *Marlin v. Bill Rich Const., Inc.*, 198 W.Va. 635, 482 S.E.2d 620 (1996) (a case that dealt with local government, not State, liability, and with the local government liability statutes, *W.Va.Code*, 29–12A–1 *et seq.*):

> The general rule of construction in governmental tort legislation cases favors liability, not immunity. Unless the legislature has clearly provided for immunity

---

8. The exclusionary language principles set forth in *National Mut. Ins. Co. v. McMahon & Sons, Inc., supra,* have been developed primarily in situations where people who have purchased insurance coverage are arguing that they expected and are entitled to coverage that will protect them against losses. However, in the instant case, the DOH is asserting that they do *not* have coverage under the BRIM policy

> because [the DOH relies on the principle that a lawsuit based on State] activity that is "not covered" by insurance is [barred by *W.Va. Const.*, Art. VI, Sec. 35.].[T]he system inadvertently creates an incentive ... to argue at every opportunity that a given activity is not covered .... This sentiment, which is the perverse opposite of the desires of a normal insured party who wants maximum coverage in an accident, runs counter to the goals of risk spreading and protection from catastrophic loss that our law has come to favor.

*Ayersman v. Division of Environmental Protection,* 208 W.Va. 544, 549, 542 S.E.2d 58, 63 (2000) (McGraw, J. concurring.) *See* note 7 *infra* where we emphasize that it is BRIM and not a particular state agency that is charged with establishing the parameters of coverage. Where the consequences of a particular claim not falling within the ambit of coverage that is afforded by a state insurance policy may include the effect of prohibiting a person from maintaining a case against the State in court, the person asserting a claim against the State obviously has standing to assert the existence of coverage. Additionally, although we do not decide the issue, we are inclined to the opinion that when there has been a final court determination that a party's claim in court against the State is barred by the provisions of *West Virginia Constitution,* Article VI, Section 35, if that party thereafter files a claim in the West Virginia Court of Claims, equitable and constitutional principles argue that any applicable periods of limitation or repose should be tolled for the period during which the party's claim was pending in court.

under the circumstances, the general common-law goal of compensating injured parties for damages caused by negligent acts must prevail.[9]

In connection with State liability, the Legislature, in authorizing BRIM to create the policy that is at issue in the instant case, stated:

> Recognition is given to the fact that the state of West Virginia owns extensive properties of varied types and descriptions representing the investment of vast sums of money; that the state and its officials, agents and employees engage in many governmental activities and services and incur and undertake numerous governmental responsibilities and obligations; that such properties are subject to losses, damage, destruction, risks and hazards and such activities and responsibilities are subject to liabilities which can and should be covered by a sound and adequate insurance program;

*W.Va.Code,* 29–12–1[1994] *Id.* (emphasis added).[10]

*W.Va.Code,* 29–12–1 [1994] evidences a remedial legislative purpose that the State establish mechanisms that will assure that the State is financially responsible and accountable for injuries occasioned by culpable State action. That remedial purpose must be given substantial weight—along with the foregoing principles that narrowly construe exclusionary policy language and favor governmental tort liability—in examining, applying, and interpreting the exclusionary language in the DOH policy.

■ Applying the foregoing principles, we believe the circuit judge was correct in

concluding that the "bridge related" exclusionary language of the DOH's policy did not as a matter of law bar the Russells' claim against the DOH. Any negligence in the DOH's bidder selection process was separate and remote in time and place from and anterior to any bridge construction. While bidder selection and retention could be arguably said to be "related" to bridge construction, such a "relatedness" connection could also be made to the most distant and tenuous activities. Applying the principles of law that narrowly construe exclusionary language, that favor liability over immunity, and that favor state accountability, we cannot read the DOH policy language as categorically excluding the Russells' claim. Therefore we affirm the circuit judge's refusal to dismiss the DOH on the basis of the exclusionary language.

However, the fact that exclusionary language does not bar the Russells' negligent selection and retention claim against the DOH does not mean that the DOH has duties related to worker safety in connection with selecting and retaining a contractor, that can run to a worker on a DOH-funded project. This is the issue on which the circuit court ruled for the DOH, and on which the Russells have appealed.

Specifically, the Russells claim that the DOH has a "due care" duty to select and retain a contractor that does not expose workers on a state-funded project to unreasonable dangers and risks.[11] The Russells principally derive this asserted duty from *W.Va.Code,* 17–4–19 [2000], that requires the DOH to award contracts to a "responsible bidder:"

---

9. 140 years ago, our nation's 16th President said:

> It is as much the duty of government to render prompt justice against itself in favor of its citizens as it is to administer the same between private individuals.

Abraham Lincoln, December 3, 1861, first annual State of the Union message.

10. We stated in *Parkulo v. West Virginia Bd. of Probation and Parole,* 199 W.Va. 161, 175–176, 483 S.E.2d 507, 521–522 (1996):

> [W]e note that the Legislature may direct such limitation or expansion of the insurance coverages and exceptions applicable to cases brought

under *W.Va.Code,* 29–12–5 as, in its wisdom, may be appropriate. The Legislature has also vested in the State Board of Insurance (Risk and Insurance Management) considerable latitude to fix the scope of coverage and contractual exceptions to that coverage by regulation or by negotiation of the terms of particular applicable insurance policies.

11. Under some circumstances, courts have allowed negligent selection and retention claims to be made by employees of a contractor against the party that selected the contractor. *See Bagley v. Insight Communications,* 658 N.E.2d 584 (Ind. 1995).

... the contract for the work, or for the supplies or materials required therefor shall, if let, be awarded by the commissioner to the lowest *responsible bidder* for the type of construction selected.

*Id.*

The Russells do not cite us to any case, from West Virginia or otherwise, that has held that such general "responsible bidder" language, commonly found in public works contracting law, imposes a specific and mandatory duty upon a public agency like the DOH to ascertain and take into account a company's worker safety history and performance.

While the DOH disputes the Russells' position, the DOH does acknowledge that the DOH's evaluation of a contractor's responsibility should and does include ascertaining and assuring that a bidder/contractor is fully financially responsible for liabilities arising out of accidents and injuries to workers.

We have held that under statutes like *W.Va.Code,* 17–4–19 [2000] and "responsible bidder" language, a government agency has substantial discretion in establishing criteria for determining bidder responsibility. Syllabus Point 5, *Pioneer Co. v. Hutchinson,* 159 W.Va. 276, 220 S.E.2d 894 (1975). Thus, the DOH presumably would not exceed its authority by including specific worker-safety-related criteria within its ambit of concern in evaluating bidders and contractors.

But the discretion afforded to the DOH by the general "responsible bidder" language of *W.Va.Code,* 17–4–19 [2000] does not afford this Court a similar discretion to judicially impose a broad and novel duty in the area of worker safety upon the DOH. We do note, however, that the worker-safety-related duties that the DOH does not dispute having—assuring that a contractor is financially responsible and accountable to injured workers—do benefit workers on state-funded projects like Mr. Russell. This duty is also consistent with the public policy of assuring full financial accountability for injuries to workers on State-funded projects that we discussed in III.A *infra.*

We hold, therefore, that the requirement of selecting a "responsible bidder" in *W.Va.Code,* 17–4–19 [2000] does not impose a mandatory duty upon the West Virginia Department of Transportation/Division of Highways ("DOH") to ascertain and take into account the worker safety history or performance of a contractor/bidder; however, this language does require the DOH to ascertain and take reasonable steps to assure the financial responsibility of a contractor/bidder for accidents and injuries to workers on a state-funded project. Such financial responsibility must include full compliance with West Virginia workers' compensation laws, including showing adequate insurance or other resources to cover damages arising from "deliberate intention" claims under *W.Va. Code,* 23–4–2 [1994].

In the instant case, the circuit court's dismissal of the DOH was based on the court's conclusion as a matter of law that although the BRIM policy did not exclude the Russells' claim, the DOH had no worker-safety-related duties that could inure to Mr. Russell's benefit.

However, we have held that the DOH does have the duty of assuring a contractor's financial responsibility and accountability for worker injuries and accidents; and we cannot say as a matter of law that the breach of this duty cannot under any circumstances give rise to a negligent selection or retention claim by a worker on a DOH-funded project. The record before this Court does not provide a basis for determining whether the DOH may have breached this duty in the instant case. We therefore reinstate the Russells' claim against the DOH and remand the case for consideration under the foregoing principles.[12]

## IV.

### *Conclusion*

The dismissals of the DOH and B & B are vacated and the instant case is remanded for

---

**12.** The parties also submit arguments in their briefs regarding rulings by the circuit court relating to independent contractor status, the public duty doctrine, the *Restatement of Torts,* qualified immunity, and indemnification. We decline to address those issues at this time, in part because they may be mooted as a result of further proceedings.

further proceedings consistent with this opinion.

Reversed and Remanded.

Justice DAVIS, deeming herself disqualified, did not participate in the decision of this case.

Justice MAYNARD concurs in part, and dissents in part.

Judge MICHAEL THORNSBURY, sitting by special assignment.