557 S.E.2d 845

**Alisha JOHNSON, as Personal Representative for the Estate of George Robertson, Plaintiff Below, Appellant,**

v.

**C.J. MAHAN CONSTRUCTION COMPANY, a Foreign Corporation; Janssen and Spaans Engineering, a Foreign Corporation; West Virginia Department of Transportation, Division of Highways; Dywidag Systems International, Inc., a Foreign Corporation, Defendants Below, Appellees,**

**State Board of Risk and Insurance Management, Appellee.**

**No. 29005.**

Supreme Court of Appeals of West Virginia.

Submitted Oct. 3, 2001.

Decided Dec. 12, 2001.

Dissenting Opinion of Justice Burnside Jan. 8, 2002.

---

**440**

David Lycan, David Lycan, L.C., Wayne, D. Jeffrey Ezra (Pro Hac Vice), Wendler & Ezra, Glen Carbon, IL, for the Appellant.

Thomas P. Maroney, Charleston, for Amicus Curiae, West Virginia Labor Federation, AFL–CIO.

Lori Simpson Davis, Davis Law Office, PLLC, Charleston, for Amicus Curiae, Fred Russell, Jr., and Rebecca Russell.

Anthony G. Halkias, Melissa J. White, Robert B. Paul, Charleston, for the Appellee, West Virginia Department of Transportation, Division of Highways.

Darrell V. McGraw, Jr., Attorney General, Robert D. Williams, Assistant Attorney General, Charleston, for the Appellee, State Board of Risk and Insurance Management.

PER CURIAM.

Alisha Johnson (hereinafter "Appellant"), as personal representative for the estate of George W. Robertson, appeals from the October 7, 1999, order of the Circuit Court of Logan County, granting dismissal of the West Virginia Department of Transportation, Division of Highways (hereinafter "WVDOH"), as a party in a personal injury action.[1]  Appellant contends that the trial court erred by granting the dismissal on the ground that the State's liability insurance does not extend coverage to negligent selection and retention of a general contractor by WVDOH.

Upon review of the briefs, the pertinent record, and arguments of counsel, we reverse the decision of the lower court and remand the case for reinstatement of WVDOH as a party.

### I.  Factual and Procedural Background

On or about October 29, 1996, George W. Robertson died while working on a bridge construction project in Logan County as an employee of Mahan Construction Company (hereinafter "Mahan").  Mahan had been retained by WVDOH as the general contractor for the bridge project.  Robertson died after he was struck and knocked off the bridge by a rod or bar that separated from the structure,[2] causing him to fall 80 to 120 feet.  Appellant filed a wrongful death suit on behalf of her father's estate in the Logan County Circuit Court on October 27, 1998, naming as defendants WVDOH, Mahan, the engineering firm involved with the project and the supplier of certain construction materials associated with Robertson's death.[3]

Through the complaint, appellant sought to charge WVDOH with negligence with regard to the following: hiring, retaining, supervising and monitoring Mahan; awarding the contract to Mahan without investigating the company's past safety record; granting or accepting Mahan's project bid solely on the basis that it was the lowest bidder; failing to follow the customary private industry practice of pre-qualifying contract candidates; and failing to inspect Mahan's work on a regular and continual basis.  The allegations

---

**1.**  Following the initial oral argument, this Court made the Board of Risk and Insurance Management a party to this litigation as the statutorily-designated agency to determine the scope of insurance coverage authorized by West Virginia Code § 29–12–5(a) (1996) (Repl.Vol.2001).

**2.**  The rod or bar was being elongated under pressure when it broke from its mooring.

**3.**  WVDOH is the only defendant below involved in this appeal.

of the complaint, however, did not include an averment that recovery against WVDOH was sought pursuant to the State's insurance contract.[4]

On November 23, 1998, in lieu of answering the complaint, WVDOH filed a motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the West Virginia Rules of Civil Procedure. In support of its motion, WVDOH relied on the provisions of *Pittsburgh Elevator v. West Virginia Board of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983),[5] to argue that it was immune from suit under the provisions of Article VI, § 35 of the West Virginia Constitution [6] because the State's liability insurance coverage did not extend to the WVDOH activities detailed in the complaint. Specifically, WVDOH contended that the selection and retention of a contractor in a bridge construction project were excluded under its liability insurance coverage because the bidding process constituted a "related or similar activity" within the meaning of those named activities excluded from policy coverage.[7] Appellant countered this argument by claiming that the exclusionary clause did not apply to WVDOH's bid-related activities asserted in her complaint. In support of their respective positions, both parties presented the disparate rulings of other circuit courts regarding the interpretations of the exclusionary clause in similar suits. By order dated Octo-

ber 7, 1999, the circuit court dismissed WVDOH from the suit on the grounds that WVDOH was entitled to rely on the State's constitutional immunity from suits for damages because there was no applicable liability insurance for the acts alleged in the complaint. Appellant seeks a reversal of this ruling.

## II. Standard of Review

■ "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo.*" Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.,* 194 W.Va. 770, 461 S.E.2d 516 (1995).

## III. Discussion

■ Appellant argues that the circuit court erred in dismissing WVDOH as a party because the precise language of the exclusionary clause of WVDOH's liability policy does not specify activities related to the WVDOH bidding process. We had the opportunity to resolve the differing conclusions being reached by the circuit courts on the issue of whether the exclusionary language of the liability insurance policy of WVDOH and the provisions of West Virginia Constitution Article VI, § 35, preclude a negligence action against the WVDOH for its bidding activities in our recent decision of *Russell v. Bush & Burchett, Inc.,* 210 W.Va. 699, 559 S.E.2d 36 (2001).[8]

> The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee.

4. We held in syllabus point three of *Parkulo v. West Virginia Board of Probation and Parole,* 199 W.Va. 161, 483 S.E.2d 507 (1996), that "this Court will not review suits against the State brought under the authority of W.Va.Code § 29–12–5 unless it is alleged that the recovery sought is limited to the applicable insurance coverage and the scope of the coverage and its exceptions are apparent from the record." We were generous in granting this appeal despite the omission in the pleadings of this allegation related to insurance coverage, because the limitation, scope of coverage and exceptions were argued below. Nonetheless, future litigants should adhere to the requirement this Court announced in *Parkulo.*

5. In syllabus point two of *Pittsburgh Elevator,* we stated that: "Suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability coverage fall outside the constitutional bar to suits against the State." 172 W.Va. at 744, 310 S.E.2d at 676.

6. West Virginia Constitution Article VI, § 35, commonly referred to as the sovereign immunity provision of our constitution, states:

7. *Endorsement # 7* of WVDOH's liability policy, provided by the State Board of Risk and Insurance Management pursuant to the provisions of West Virginia Code Chapter 29, Article 12, contains the following exclusionary language:

> [I]nsurance afforded under this policy does not apply to any claim resulting from the ownership, design, selection, installation, maintenance, location, supervision, operation, construction, use, or control of ... bridges ... or related or similar activities ....

8. The case before us and *Russell* have evolved as companion cases on the issue of the extent of the State's liability insurance coverage for WVDOH

■ We held in syllabus point six of *Russell* that "*W.Va.Code*, 29–12–1 [1994] evidences a remedial legislative purpose that the State establish mechanisms that will assure that the State is financially responsible and accountable for injuries occasioned by culpable State action." Guided by this remedial purpose and our established legal principles of narrowly construing exclusionary provisions of insurance policies and of favoring local government liability over immunity, we concluded in *Russell* that the bidding process of WVDOH is anterior to bridge construction and as such is not a "similar or related" activity to those enumerated in the exclusionary clause of the WVDOH liability policy. 210 W.Va. at 706–707, 559 S.E.2d at 43–44.

Because the circuit court in the case *sub judice* reached the opposite conclusion in interpreting the identical insurance policy and exclusionary language, we must reverse the circuit court's order dismissing WVDOH, and remand the case for further proceedings with regard to the allegations that WVDOH was negligent in its bidding process.

■ To assist the lower court in conducting the proceedings involving WVDOH on remand, we further note our conclusions in *Russell* regarding the extent of WVDOH's duty to worker safety in the bidding process. The complaint in the instant case alleges that WVDOH has a worker-related duty in carrying out its bidder selection process to investigate a bidder's past safety record. A similar argument was raised in *Russell,* and we declined "to judicially impose a broad and novel duty in the area of worker safety" on WVDOH. 210 W.Va. at 707, 559 S.E.2d at 44. Instead, we recognized the practices acknowledged by WVDOH during its oral presentation before this Court and held in syllabus point three of *Russell* that: "There is a public policy that the full range of rights provided to workers under West Virginia law should protect and be available to workers on a West Virginia state-funded construction project." 210 W.Va. at 704, 559 S.E.2d at 41. The application of this public policy to WVDOH's responsibilities in awarding construction contracts was defined in syllabus point seven of *Russell:*

> The requirement of selecting a "responsible bidder" in *W.Va.Code*, 17–4–19 [2000] does not impose a mandatory duty upon the West Virginia Department of Transportation/Division of Highways ("DOH") to ascertain and take into account the worker safety history or performance of a contractor/bidder; however, this language does require the DOH to ascertain and take reasonable steps to assure the financial responsibility of a contractor/bidder for accidents and injuries to workers on a state-funded project. Such financial responsibility must include full compliance with West Virginia workers' compensation laws, including showing adequate insurance or other resources to cover damages arising from "deliberate intention" claims under *W.Va.Code*, 23–4–2 [1994].

210 W.Va. at 707, 559 S.E.2d at 44.

## IV. Conclusion

Accordingly, the order entered by the Circuit Court of Logan County dismissing WVDOH as a party is hereby vacated and the case is remanded to the circuit court for further proceedings consistent with this opinion.

Reversed and remanded.

Justice DAVIS, deeming herself disqualified, did not participate in the decision of this case.

Judge ROBERT BURNSIDE, sitting by temporary assignment.

Justice MAYNARD dissents.

---

bid activities: Appellant relied upon the circuit court's ruling in the Russells' case in support of her argument to the lower court against dismissal of WVDOH as a party; the Russells filed an amicus curiae brief in this appeal. The appeals were not consolidated on Appellant's motion because different judges were sitting by temporary assignment in the two cases.

ROBERT BURNSIDE, Judge, dissenting.

(Filed Jan. 8, 2002)

**1. The BRIM policy is a state-funded self insurance arrangement which constitutes a limited waiver of sovereign immunity.**

The legislature authorized the purchase of liability insurance providing coverage of State "property, activities, and responsibilities," to provide compensation for claims that otherwise would have been barred by sovereign immunity. *West Virginia Constitution,* Article VI, § 35 *W.Va.Code* § 29–12–5. *Parkulo v. West Virginia Bd. of Probation and Parole,* 199 W.Va. 161, 483 S.E.2d 507 (1997) See also, *Pittsburgh Elevator Co. v. West Virginia Bd. of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983).

The Legislature created The State Board of Insurance [Risk and Insurance Management] (BRIM) to supervise the state's liability insurance plans. W.Va Code 29–12–1, *et seq.* Pursuant to this responsibility, BRIM established the equivalent of a self insurance program administered by, but not funded by, a private insurance company, American International Group (AIG). The "premium" in the BRIM arrangement is a fund set aside by the State from which the claims are paid. The determination of which claims should be paid and which denied is governed by the "policy," which, like an ordinary insurance policy, states coverages and exclusions from coverage. Since public funds, rather than ordinary insurance, pay the claims, this system constitutes the legislative waiver of a degree of sovereign immunity as to those claims covered by the program, but only to such claims. To the extent that certain categories of claims are not covered by the BRIM policy, immunity has not been waived.

**2. The exclusionary language is unambiguous and should be applied according to its terms**

Notwithstanding that this "policy" is not an ordinary insurance policy, the application of the ordinary rules of construction of an insurance policy yield the conclusion that the exclusionary language is unambiguous and should be applied according to its terms.

*Russell* and the majority herein correctly hold that the Department of Highways has the duty to select a contractor who is financially responsible, but that this duty does not mandate that the Department "ascertain and take into account the worker safety record or performance of a contractor/bidder..." Without doubt, the contractor should be in good standing with Workers Compensation Commission and it should carry sufficient liability insurance to compensate its employees for damages arising from "deliberate intention" claims.

The majority assumes, without analysis, that this is a special duty owed by the DOH to the individual employee of a contractor, as distinguished from a public duty owed to the public at large, within the meaning of *Wolfe v. City of Wheeling,* 182 W.Va. 253, 387 S.E.2d 307 (1989) and subsequent cases on that point. Accepting the assumption *arguendo* that a breach of that duty gives rise to a claim against the DOH by an individual employee of the negligent contractor, it does not support the conclusion that the BRIM policy covers such a claim.

BRIM is "clearly clothed with the authority to tailor the coverages and exceptions to those deemed necessary to the protection of the State and those wishing to assert a claim against it." *Parkulo* at 170, 483 S.E.2d 507.....'[T]he Legislature may direct such limitation or expansion of the insurance coverages and exceptions applicable to cases brought under *W.Va Code* § 29–12–5, as, in its wisdom, may be appropriate. The Legislature has also vested in the State Board of Insurance (Risk and Insurance Management) considerable latitude to fix the scope of coverage and **contractual exceptions** to that coverage by regulation or by negotiation of the terms of particular applicable insurance policies...." *Parkulo* at 521–522 (boldface added).

This is exactly what happened here. The Legislature, speaking through BRIM, chose to exclude claims "resulting from the.... construction.... of a bridge." The majority opinion refuses to apply this exclusion on the grounds that exclusionary language should be construed against the insurer, citing to Syllabus Point 4 in the companion case, *Rus-*

*sell v. Bush & Burchett, Inc.,* 210 W.Va. 699, 559 S.E.2d 36 (2001).

Russell's syllabus point 4 cites to *National Mutual Insurance Company v. McMahon & Sons, Inc.,* 177 W.Va. 734, 356 S.E.2d 488 (1987). *McMahon* holds to the long established principle that a court does not "construe" an exclusionary term unless it first finds that it is ambiguous. *McMahon* at 740, 356 S.E.2d 488. In *McMahon,* that predicate existed, upon which this Court correctly proceeded to construe the exclusionary language strictly against the insurer. However, *McMahon* is misapplied in *Russell,* with the result that exclusionary language is construed strictly against the insurer just because it is exclusionary, irrespective of whether it is ambiguous. If this becomes the rule, an insurance policy could rarely contain an enforceable exclusion.

The exclusionary language requires careful reading, but that requirement does not render it ambiguous. If the language is clear, it is to be applied, not construed.

When the Department of Highways builds a bridge, it must hire a private contractor to do it. When that happens, it is the contractor, and not the DOH, who does the building. It is the contractor's duty to perform the work competently and safely. The contractor owes this duty by contract to the State, and by various statutory and common law principles to its employees and third parties.

The relationship between the State and its contractor is nearly identical to that between a private citizen and an independent contractor. Two principles of the relationship between a principal and its independent contractor make the exclusionary language necessary, proper, and clear. The first is the rule that when an independent contractor negligently injures a third party, the principal is generally not liable to at third party for the negligent hiring of the contractor. There are numerous exceptions to this rule, one of which is that the principal should bear liability for negligent hiring if the "exercise of reasonable diligence would disclose facts demonstrating clear incompetence for contemplated task." *Thomson v. McGinnis,* 195 W.Va. 465, 465 S.E.2d 922 (1995).

*Thompson* also said, however, that the principal "has no affirmative duty to conduct comprehensive inquiry into credentials of independent contractor, or to engage in personal inquiry into credentials of contractor who is licensed and reputable individual or firm."

The second principle is that the negligence of the independent contractor is generally not imputed to its principal. The major exception to this rule arises when the principal directs the conduct of the independent contractor with such detail that the "independent" contractor is no longer independent. *Chenoweth v. Settle Eng'rs, Inc.,* 151 W.Va. 830, 156 S.E.2d 297 (1967).

It is in this context that the exclusionary language should be examined. The policy excludes "any claim resulting from the ownership, design, selection, **installation**, maintenance, location, supervision, operation, **construction**, use, or control of ....bridges" The *Russell* opinion and the majority in *Johnson* skip over the issue of whether the exclusion is ambiguous, and refuse to apply the policy exclusion because of the conclusion that the selection of a contractor is sufficiently "anterior" to the construction of a bridge that it is not a part of the construction of a bridge.

The majority's conclusion overlooks the way the DOH is required to operate. A private entity may choose between hiring a contractor or doing the work himself. However, the Department of Highways is **required by statute** to hire a contractor to build a bridge. W.Va.Code § 17-4-19. Thus, for the DOH, the hiring of a contractor is an inseverable stage of building a bridge. It does not have the capacity to build a bridge without hiring a contractor, and a contractor cannot be hired without selecting one. Under these circumstances, the selection of a contractor by the DOH cannot possibly be "anterior" to the construction of a bridge.

If one reads the complete text of the policy exclusion, it becomes apparent that it reflects the generally accepted principles in the relationship between a principal and an independent contractor. The **exception** to the exclusion provides that the exclusion does not

apply "to claims of bodily injury...which...occur while employees of the State of West Virginia are **physically present** at the site of the incident..."(boldface added). Obviously, if the principal is present when the contractor commits a negligent act, an issue of fact arises whether the principal, here the DOH, is exercising such direct control over the independent contractor that the liability for the negligence of the independent contractor is imputed by law to its principal.

The BRIM policy is intended to cover certain negligent acts committed **by the State** or its agencies, including those that occur on the contractor's work site while an agent of the State is present. But it excludes certain claims, among which are those arising from the construction of a bridge, which as shown above must, for the DOH, encompass the selection of a contractor. This exclusion does not "nullify the purpose of indemnifying the insured" as forbidden by syllabus point 9, *McMahon,* but it reasonably and permissibly limits that indemnity.

In this context, the exclusionary language is of sufficient clarity that it does not require judicial construction.

**3. The majority's refusal to apply the exclusion shifts to the taxpayers of West Virginia the liability for the negligence of a private contractor.**

The purpose of the BRIM arrangement is to provide compensation to those persons who have certain claims against the State. It is not intended to pay claims owed by private companies who contract with the State. According to the majority's construction of this language, however, the BRIM policy will cover not just the State, but also its private contractors.

As discussed above, the DOH is required by statute to hire a contractor to build a bridge. It is not permitted to build the bridge itself. The contractor is required to get its own insurance and pay its own bills, and the DOH is required to select a contractor who has sufficient insurance to protect the employees of the contractor. The result is that the private contractor gets liability insurance to protect his injured employees,

and the taxpayers fund BRIM to satisfy claims against the State.

If a private company injures or kills one of its employees by an act that supports a "deliberate intent" action, and its own liability insurance is inadequate to compensate that employee, the company ordinarily pays the excess damages out if its own pocket, unless it had the foresight to purchase sufficient excess liability insurance. However, under the rule of the present case, if that same private company happens to have a contract to build a bridge for the State, the contractor's excess liability is shifted to the taxpayers of the state of West Virginia.

If the BRIM system is made liable for a claim grounded on the failure of the DOH to make sufficient inquiry into a contractor's financial responsibility, the BRIM policy becomes, in effect, the umbrella insurer of the state's contractors. This is clearly not the intent of W.Va.Code § 29–12–1, *et seq.* The decision whether the State of West Virginia should accept that vast financial responsibility belongs to the taxpayers, speaking through the Legislature, and not to this Court.

This Court should apply the policy exclusion according to its clear and unambiguous terms. In the absence of liability insurance, or its BRIM equivalent, the State may not be a party to a personal injury action. *Pittsburgh Elevator v. West Virginia Board of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983). The Circuit Court of Logan county should be affirmed in its finding that the exclusion in the policy excludes this claim, and that the Department of Highways should be dismissed as a Defendant.

On these grounds, I respectfully dissent. I am authorized to state that Justice MAYNARD joins me in this dissenting opinion.