672 S.E.2d 255

**Frank A. SAVARESE, Plaintiff Below, Appellant,**

v.

**ALLSTATE INSURANCE COMPANY, Kim Jozsa Lashwanda Carter, and Kira Hill, Defendants Below, Appellees.**

No. 33443.

Supreme Court of Appeals of West Virginia.

Submitted: Jan. 23, 2008.

Decided: Sept. 26, 2008.

Dissenting Opinion of Justice Starcher Dec. 30, 2008.

David A. Jividen, Chad C. Groome, Jividen Law Offices, PLLC, Wheeling, for Appellant.

Brent K. Kesner, Ellen R. Archibald, Tanya M. Kesner, Kesner, Kesner & Bramble, PLLC, Charleston, for Appellees.

BENJAMIN, Justice.

In the instant matter, Appellant Frank A. Savarese (hereinafter "Mr. Savarese") seeks reversal of the Circuit Court of Ohio County's October 11, 2006, Memorandum Opinion and Order dismissing, without prejudice, this first party bad faith action, pursuant to West Virginia Code § 56–1–1(c)(2003), for lack of subject matter jurisdiction. After thorough consideration of the arguments of the parties, the record below and all pertinent legal authorities, we affirm the circuit court's dismissal order.

## I.

### FACTUAL AND PROCEDURAL HISTORY

Mr. Savarese, a resident of Yorkville, Jefferson County, Ohio, was injured in a March 14, 2003, automobile accident occurring in Yorkville, Belmont County, Ohio.[1] Mr. Savarese thereafter retained an attorney located in Wheeling, Ohio County, West Virginia, to pursue any claims arising from this automobile accident.[2] This attorney promptly filed suit in the Court of Common Pleas for Jefferson County, Ohio, against the other driver who was resident of Belmont County, Ohio.

At the time of the accident, Mr. Savarese was insured by the Appellee Allstate Insurance Company (hereinafter "Allstate") under a policy of insurance providing for Twenty-five Thousand Dollars ($25,000) in medical payments coverage. As a result of injuries sustained in this accident, Mr. Savarese sought treatment from medical providers in both Ohio and West Virginia. His claims for medical payments under his Allstate policy were handled by Allstate representative Kim Jozsa (hereinafter "Ms. Jozsa") in Allstate's Hudson, Ohio, office, Allstate representative Lashwanda Carter (hereinafter "Ms. Carter") in Allstate's Birmingham, Alabama, office,[3] and Allstate representative Kira Hill (hereinafter "Ms. Hill") in Allstate's Birmingham, Alabama, office. During the course of handling Mr. Savarese's medical payment claims, requests for information and notification of benefit payments were directed to Mr. Savarese's counsel in Wheeling, West Virginia.

In March 2006, Mr. Savarese filed suit in the Circuit Court of Ohio County, West Virginia, against Allstate, an Illinois corporation with a principal place of business in Illinois, Ms. Jozsa, Ms. Carter and Ms. Hill alleging that they failed to exercise good faith in handling his first-party medical payment claims, that they breached his insurance contract by failing to pay such claims, that their failure to pay his medical payment claims caused him severe emotional distress and that Allstate failed to properly train its employees. In his complaint, Mr. Savarese

---

**1.** The town of Yorkville, Ohio, is situated partially in Jefferson County, Ohio, and partially in Belmont County, Ohio.

**2.** Wheeling, West Virginia, is situated east of Belmont County, Ohio, directly across the Ohio River and is south of Yorkville.

**3.** Mail for Allstate's Birmingham, Alabama, office is sent to a Dallas, Texas, address.

sought both compensatory and punitive damages. The defendants promptly removed the action to federal court, however the case was remanded to the Circuit Court of Ohio County on the basis that the defendants did not demonstrate that the jurisdictional amount in controversy requirement had been satisfied. Upon remand, Allstate filed a motion to dismiss asserting that the circuit court lacked both subject matter jurisdiction and venue over Mr. Savarese's action because it involves no West Virginia parties and is governed by Ohio law. The individual defendants, appearing specially to challenge jurisdiction and venue, also filed a motion to dismiss. In addition to the issues raised by Allstate, the individual defendants argued insufficiency of service of process and lack of personal jurisdiction as to the claims asserted against them.

In his response to the motions to dismiss, Mr. Savarese admitted that Ohio law governed his claims but asserted that the Circuit Court of Ohio County, West Virginia, had jurisdiction to hear this matter because Allstate had directed communications regarding his medical benefit payments to his Wheeling, West Virginia, attorney and that some of his medical providers were located in Ohio County, West Virginia. To support this position, he attached numerous letters directed to his counsel involving his medical payment

claims. Of the fifty-three (53) letters attached, thirty-three (33) involved the denial of payment, in whole or in part, to an Ohio chiropractor,[4] David A. Smith, D.C.[5] Seven (7) letters indicated payment in full had been remitted to medical providers.[6] Eight (8) letters were requests for medical records, medical records release authorizations, and/or further information such as diagnostic codes and tax identification numbers so that payments could be processed.[7] Two (2) letters evidence direct reimbursements to Mr. Savarese. An April 13, 2005, letter indicated that $18,522.57 had been paid in medical expenses to date. The remaining two (2) letters, both dated March 30, 2005, notified Mr. Savarese's counsel that partial payment had been made to David Liebeskind, M.D., a West Virginia provider. The Explanation of Benefits referenced as attached to these two letters which would explain the decision were not included in the record created in the circuit court and there is no way for this Court to determine whether the April 13, 2005, letters were duplicates, whether they involved one or more charges, the reason Dr. Liebeskind was not fully reimbursed, or if he eventually received full payment.

Applying West Virginia Code § 56–1–1(c)(2003), the circuit court dismissed the underlying civil action. This statute provided,[8] in pertinent part, that "a nonresident of

---

**4.** After noting the medical providers he saw in West Virginia, Mr. Savarese makes a somewhat disinguous statement in his brief before this Court that he "received no medical treatment in Jefferson County, Ohio, save an MRI performed in Steubenville, Ohio." However, in the materials he filed before the circuit court he admits to receiving treatment from David A. Smith, D.C., a chiropractor practicing in St. Clairsville, Ohio, and Thomas J. Romano, M.D., a physician practicing in Martins Ferry, Ohio. Both St. Clairsville and Martins Ferry are located in Belmont County, Ohio.

**5.** Of these thirty-three (33) letters, four (4) were dated July 17, 2003, nine (9) were dated January 21, 2004, four (4) were dated May 19, 2004, two (2) were dated October 4, 2004, two (2) were dated January 5, 2005, and six (6) were dated March 29, 2005. Although each letter referenced an attached explanation of benefits to explain why full payment was not rendered, no attachments were included with any of the letters submitted by Mr. Savarese. Therefore, it is impossible for this Court to know, based upon the record before it, whether the letters bearing the

same dates involved distinct payment decisions or were simply duplicates.

**6.** Again, the explanation of benefits referenced in these letters were not included in the materials submitted to the circuit court so there way for this Court to know what medical provider had received payment.

**7.** Two of these letters involved four West Virginia health care providers, Wheeling Hospital, A.V. Jellen, M.D., the Howard Long Wellness Center and the Ohio Valley Medical Center. There is no evidence on the record before this Court that these providers were not ultimately paid in the fourteen months between the date of the last letter and filing of Mr. Savarese's response to the motions to dismiss.

**8.** Subsequent to this Court's decision in *Morris v. Crown Equipment Corporation*, 219 W.Va. 347, 633 S.E.2d 292 (2006), *cert. denied*, 549 U.S. 1096, 127 S.Ct. 833, 166 L.Ed.2d 665 (2006), *cert. denied*, 549 U.S. 1096, 127 S.Ct. 833, 166

the state may not bring an action in a court of this state unless all or a substantial part of the acts or omissions giving rise to the claim asserted occurred in this state." In its October 11, 2006, order, the circuit court noted that no party was a resident of West Virginia and that "[a]ll parties have agreed that Ohio law should apply to the claims." Acknowledging Mr. Savarese's argument that "the acts or omissions giving rise to jurisdiction in West Virginia are several calls and letters from the Defendants directed to [his] attorney located in Ohio County, West Virginia[,]" the circuit court framed the question before it as "whether these communications constitute 'a substantial part of the acts or omissions giving rise to the claim asserted.'" Answering this question in the negative, the circuit court explained its decision stating that it did:

> not agree that the communications sent to the Plaintiff's attorney are a substantial part of the acts giving rise to the claims. The claim was adjusted in offices located in Hudson, Ohio, and Birmingham, Alabama. Any decisions involving whether to pay or to deny benefits under the policy were made at these locations. The decisions were then simply communicated to the Plaintiff's attorney, but they were already finalized before they were communicated.
>
> A mere communication to an attorney that a decision has been made, without more, cannot confer subject matter jurisdiction. To find differently would put the Defendants in a situation where they would either have to 1) submit to jurisdiction anywhere a claimant hires an attorney simply because they have a duty to communicate with the attorney, or 2) refuse to send correspondence to a claimant's attorney in order to preserve their jurisdictional defenses, but possibly give rise to additional bad faith claims for fail-

ure to communicate. The Court believes that more than Plaintiff's counsel's physical location is contemplated by W. Va. Code § 56–1–1(c) in order for subject matter jurisdiction to exist over claims filed in this state by nonresidents.

(footnote omitted). Accordingly, the circuit court dismissed the action, without prejudice, for lack of subject matter jurisdiction.[9] It is from this order that the instant appeal was taken. As explained in further detail below, we agree that the mere presence of Mr. Savarese's counsel in West Virginia, including communications directed to him, is insufficient to permit the instant action to proceed in the courts of our state. Accordingly, we affirm the circuit court's dismissal order.

## II.

### STANDARD OF REVIEW

■ As noted above, the circuit court dismissed Mr. Savarese's for lack of subject matter jurisdiction based upon motions to dismiss filed by the various Appellees. Although it characterized its ruling as one based upon a lack of subject matter jurisdiction, the circuit court's ruling is clearly based upon application of the then-existing venue statute, W. Va.Code § 56–1–1(c). In general, this Court will apply a *de novo* standard of review to a circuit court's order granting a motion to dismiss. Syl. pt. 2, *State ex rel. McGraw v. Scott Runyan Pontiac–Buick, Inc.*, 194 W.Va. 770, 461 S.E.2d 516 (1995). *See also, Elmore v. Triad Hospitals, Inc.*, 220 W.Va. 154, 157–58, 640 S.E.2d 217, 220–21 (2006) (*per curiam*) (noting applicability of *de novo* standard of review to dismissal pursuant to Rule 12(b)(1) and 12(b)(6)); *Johnson v. C.J. Mahan Const. Co.*, 210 W.Va. 438, 441, 557 S.E.2d 845, 848 (2001) (*per curiam*) (noting applicability of *de novo* standard of review to motion filed pursuant

L.Ed.2d 665 (2006), which found this statute constitutionally infirm when a claim was asserted against a West Virginia defendant, the Legislature repealed W. Va.Code § 55–1–1(c) (2003) and enacted a separate *forum non conveniens* statute at W. Va.Code § 56–1–1a (2007). As subsection (c) to W. Va.Code § 56–1–1 has been repealed, all references to W. Va.Code § 56–1–1(c) herein are to 2003 enactment.

9. The circuit court recognized the additional grounds raised by the appellees in their motions to dismiss, specifically W. Va. R.Civ. Pro. 12(b)(2) (lack of jurisdiction over the person), W. Va. R.Civ. Pro. 12(b)(3) (improper venue), and W. Va. R.Civ. Pro. 12(b)(5) (insufficiency of service of process). However, the circuit court declined to address these grounds based upon its lack of subject matter jurisdiction.

to Rule 12(b)(1)). However, we recently set forth an abuse of discretion standard applicable to dismissals for improper venue. Syl. pt. 1, *United Bank, Inc. v. Blosser,* 218 W.Va. 378, 624 S.E.2d 815 (2005) ("This Court's review of a trial court's decision on a motion to dismiss for improper venue is for abuse of discretion."). A *de novo* standard of review is likewise applicable to the extent the circuit court's application of W. Va.Code § 56–1–1(c) is implicated. Syl. pt. 1, *Chrystal R.M. v. Charlie A.L.,* 194 W.Va. 138, 459 S.E.2d 415 (1995) ("Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."). With these applicable standards guiding our decision, we affirm the circuit court's decision to dismiss the underlying action, without prejudice to refile in another jurisdiction.

## III.

## DISCUSSION

At the outset, in affirming the circuit court's decision, we observe that we are not bound by the reasons set forth by the circuit court in its decision to dismiss this matter. As we recently recognized in *Hoover v. Moran,* 222 W.Va. 112, 662 S.E.2d 711, 718 (2008) (*per curiam*), "our cases have made clear that 'it is permissible for us to affirm the granting of [dismissal] on bases different or grounds other than those relied upon by the circuit court.'" *Hoover v. Moran,* 222 W.Va. at 119, 662 S.E.2d at 718, quoting, *Gentry v. Mangum,* 195 W.Va. 512, 519, 466 S.E.2d 171, 178 (1995). *See also, Schmehl v. Helton,* 222 W.Va. 98, 662 S.E.2d 697, 705, n. 7 (2008) ("this Court may in any event affirm the circuit court on any proper basis, whether relied upon by the circuit court or not."); *Murphy v. Smallridge,* 196 W.Va. 35, 36–7, 468 S.E.2d 167, 168–9 (1996) ("An appellate court is not limited to the legal grounds relied upon by the circuit court, but it may affirm or reverse a decision on any independently sufficient ground that has adequate support."); Syl. pt. 3, *Barnett v. Wolfolk,* 149 W.Va. 246, 140 S.E.2d 466 (1965) ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such

judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment."). Thus, while the circuit court based its dismissal order upon a finding that it lacked subject matter jurisdiction, this finding was grounded upon application of W. Va.Code § 56–1–1(c), a venue statute. So long as W. Va.Code § 56–1–1(c) was properly applied, this Court may affirm the decision of the circuit court regardless of the label the circuit court attached to its reasoning.

*A.*

### *W. Va.Code § 56–1–1 (2003)*

At the heart of this appeal is whether the circuit court properly applied W. Va.Code § 56–1–1(c) to prohibit Mr. Savarese's action, based upon Ohio bad faith law, from proceeding in the Circuit Court of Ohio County, West Virginia. Contained within W. Va. Code § 56–1–1 (2003), a statute entitled "Venue generally", subsection (c) provided in its entirety:

> Effective for actions filed after the effective date of this section, a nonresident of the state may not bring an action in a court of this state unless all or a substantial part of the acts or omissions giving rise to the claim asserted occurred in this state: Provided, That unless barred in the state where the action arose, a nonresident of this state may file an action in state court in this state if the nonresident cannot obtain jurisdiction in either federal or state court against the defendant in the state where the action arose. A nonresident bringing such an action in this state shall be required to establish, by filing an affidavit with the complaint for consideration by the court, that such action cannot be maintained in the state where the action arose due to lack of any legal basis to obtain personal jurisdiction over the defendant.
>
> In a civil action where more than one plaintiff is joined, each plaintiff must independently establish proper venue. A person may not intervene or join in a pending action as a plaintiff unless the person independently establishes proper venue. If venue is not proper as to any such nonresi-

dent plaintiff in any court of this state, the court shall dismiss the claims of the plaintiff without prejudice to refiling in a court in any other state or jurisdiction.

This Court has had two prior opportunities to address this venue provision. In the first, *Morris v. Crown Equipment Corporation,* 219 W.Va. 347, 633 S.E.2d 292 (2006), we held, in syllabus point 2, that "[u]nder the Privileges and Immunities Clause of the *United States Constitution,* Art. IV, Sec. 2, the provisions of *W. Va.Code,* 56–1–1(c) [2003] do not apply to actions filed *against West Virginia citizens and residents.*" (emphasis added). In the second, *In re FELA Asbestos Cases,* 222 W.Va. 512, 665 S.E.2d 687 (2008), we affirmed the application of W. Va.Code § 56–1–1(c) to dismiss complaints filed by over a thousand railroad employees against their railroad employers where the parties stipulated that all of the employee/plaintiffs resided outside of West Virginia, all of their injuries occurred outside of West Virginia and all of the defendant employers were incorporated outside of West Virginia. Indeed, in *In re FELA Asbestos Cases,* 222 W.Va. at 515, 665 S.E.2d at 690, we expressly recognized the limited scope of *Morris* stating that "in *Morris* [we] construed the 2003 venue statute to mean that if one of the defendants in the action was a West Virginia resident, then the action could properly be filed in a West Virginia court.... We therefore permitted the action by a Virginia resident that arose in Virginia to proceed, because one of the defendants was a West

Virginia citizen and resident." In neither case did we address the degree of conduct which would satisfy the "substantial part of the acts or omissions giving rise to the claim" requirement of W. Va. § 56–1–1(c).

### *B.*

### *"all or a substantial part of the acts or omissions giving rise to the claim"*

■ All parties admit that no party herein is a resident of West Virginia and that Ohio law governs Mr. Savarese's claims. In arguing that it is appropriate to proceed with his claim in the Circuit Court of Ohio County, West Virginia, Mr. Savarese maintains that the communications which Allstate directed to his West Virginia attorney were sufficient to satisfy W. Va.Code § 56–1–1(c)'s requirement that "all or a substantial part of the acts or omissions giving rise to the claim" occur in West Virginia where plaintiff is a not a resident of West Virginia.[10] Relying upon footnote 4 of *Morris,* Mr. Savarese argues that we should look to federal decisions discussing the concept of substantiality under the federal venue statute, 28 U.S.C. § 1391(a)(2) (2002),[11] as persuasive authority in discussing the scope of the concept under W. Va.Code § 56–1–1(c).[12] In further support of this argument, Mr. Savarese relies upon a number of federal cases which stand for the proposition that venue over a defendant may be proper where the defendant has directed communications into a jurisdiction. While such a finding may be appropriate in circumstances where the defendant challeng-

---

**10.** Mr. Savarese has made reference to the fact that Allstate does business in West Virginia by issuing policies and adjusting claims arising in West Virginia. He also admits, however, that such business is unrelated to his claims. As we recognized in *In re FELA Asbestos Cases,* venue is not proper, under W. Va.Code § 56–1–1(c) over a defendant who may do business in this state where the defendant is not incorporated in this state *and* the claim is unrelated to the business conducted by the defendant in this state.

**11.** 28 U.S.C. § 1391(2002), the federal general venue statute provides, in pertinent part:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same

State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**12.** Although Mr. Savarese asserts that this Court "clearly recognized federal law in this area as persuasive for defining this term" in footnote 4, we would note that footnote 4 was included in the factual background portion of the *Morris* opinion and set forth the arguments made by the appellant therein. However, it is correct that this Court often relies upon federal authority addressing similar concepts as persuasive authority.

ing venue voluntarily directed the relied upon communications to the jurisdiction, such is not the situation currently before this Court. In the instant matter, Allstate and the individual defendants were required to direct communications to Mr. Savarese's attorney in West Virginia solely due to Mr. Savarese's decision to retain a West Virginia attorney. Mr. Savarese's decision necessitated Allstate directing communications to Mr. Savarese's chosen representative in order to perform its preexisting contractual duties to Mr. Savarese. Had Mr. Savarese not retained a West Virginia attorney to represent him in seeking performance of an Ohio contract for a claim arising in Ohio, the communications relied upon would not have been directed to West Virginia.

The federal cases relied upon by Mr. Savarese are easily distinguishable from the situation currently before this Court because each involves circumstances where the underlying claim arose in the challenged jurisdiction or the defendant voluntarily directed communications into a jurisdiction in an effort to establish a business relationship or fraudulently induce action in that jurisdiction. For example, in *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38 (1st Cir.2001), a case heavily relied upon by Mr. Savarese, the United States Court of Appeals for the First Circuit found venue to be appropriate in Puerto Rico for a claim of bad faith/wrongful denial of an insurance claim asserted against a French insurer and underwriters located in England and the State of Georgia. The plaintiff therein, Uffner, was a resident of the Virgin Islands. Critical to the court's decision that venue was appropriate in Puerto Rico was the fact that the underlying claim arose from the sinking of Uffner's yacht in Puerto Rican waters. *Uffner*, 244 F.3d at 43. The court rejected the district court's conclusion that the underlying event, the sinking of the yacht, did not constitute a "substantial" part of the events underlying the claim because the loss constituted a tort action and the bad faith action asserted against the insurers and underwriters sounded in contract. *Id.* at 41. The court explained its reasoning stating:

> Appellees argue that Uffner's complaint alleges a bad faith denial of his insurance claim, not that the loss itself was due to their fault or negligence. Consequently, they reason, the sinking of the vessel cannot be considered "substantial." It is true, as the district court pointed out, that the legal question in the suit is "whether [an out-of-water survey] was necessary under the terms of the insurance contract." Resolving this issue does not require an investigation into how, when, or why the accident occurred. In this sense, the sinking of Uffner's yacht is not related to the principal question for decision.
>
> However, an event need not be a point of dispute between the parties in order to constitute a substantial event giving rise to the claim. *Cf. Woodke v. Dahm*, 70 F.3d 983, 986 (8th Cir.1995) (requiring that the event itself be "wrongful" in order to support venue). In this case, Uffner's bad faith denial claim alleges that the loss of his yacht was covered by the contract and the payment due to him wrongfully denied. Thus, although the sinking of *La Mer* is itself not in dispute, the event is connected to the claim inasmuch as Uffner's requested damages include recovery for the loss. We conclude that, in a suit against an insurance company to recover for losses resulting from a vessel casualty, the jurisdiction where that loss occurred is "substantial" for venue purposes.

*Id.* at 43. Had Mr. Savarese been injured in an accident occurring in West Virginia, *Uffner* would be on point and persuasive to this Court. In such an event, West Virginia may arguably have an interest in insuring that damages sustained in this state are appropriately compensated such that venue for Mr. Savarese's action arising under an Ohio contract and governed by Ohio law may be appropriate in this state. However, those are not the facts with which we are presented.

In another case relied upon by Mr. Savarese, *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir.2004), the United States Court of Appeals for the Fourth Circuit set forth the following test for determining whether an act was substantial enough to support venue:

in determining whether events or omissions are sufficiently substantial to support venue under the amended statute, a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review the entire sequence of events underlying the claim.

(internal citations and quotations omitted). *Mitrano* involved a claim for attorneys fees asserted in the United States District Court for the Eastern District of Virginia by an attorney against his former client, a resident of Massachusetts. *Mitrano*, 377 F.3d at 404. At the time the contract was entered, the attorney was a resident of New Hampshire, but thereafter moved to Virginia. *Id.* Pursuant to this contract, the attorney initiated an action on behalf of the client in the Eastern District of Virginia challenging the transfer of an internet domain name to the registry of a French court where a trademark infringement case against the client was pending. *Id.* The district court found venue to be improper in "the Eastern District because Mitrano's performance of legal work was 'tangential, not substantial' to Mitrano's breach of contract claim." *Id.* at 405. The Fourth Circuit disagreed, finding that work performed under the contract in the Eastern District of Virginia could constitute a " 'substantial part of the events [and] omissions giving rise to [Mitrano's] claim' for breach of contract." *Id.* at 405–06. Accordingly, the matter was remanded to the district court for a determination of the extent of work performed within the Eastern District of Virginia and whether the same constitutes a substantial part of the attorney fee claim. *Id.* at 406.

Additionally, in *Verizon Online Services, Inc. v. Ralsky*, 203 F.Supp.2d 601 (E.D.Va. 2002), the United States District Court for the Eastern District of Virginia denied defendants' motions to dismiss for lack of personal jurisdiction and venue in an action brought by an internet service provider against the Michigan originators of unsolicited bulk e-mails (hereinafter "UBE's") or "spam" which were transmitted to and through seven of the internet service provider's servers located in Virginia. Explaining the situation before it, the court stated:

> Crediting the allegations in Verizon's Amended Complaint, [d]efendants deliberately transmitted millions of UBE to and through Verizon's e-mail servers in Virginia. In doing so, [d]efendants solicited business from Verizon's subscribers for pecuniary gain, while at the same time trespassing on Verizon's proprietary network causing harm to its servers located in Virginia.
>
> Defendants knew or should have known that such trespass violated Verizon's public anti-UBE policy and that the brunt of the harm caused by their allegedly tortious conduct would fall on Verizon's servers. Allowing [d]efendants to escape personal jurisdiction in a forum they have exploited for pecuniary gain while causing a tort to a Virginia resident would constitute a manifest unfairness to the rights of Verizon and the interests of Virginia. Defendants cannot bombard with impunity a Virginia Internet Service Provider ("ISP"), consuming server capacity and deluging the ISP's customers with spam, and then avoid jurisdiction by asserting ignorance of where the UBE was going or the harm such spam would cause the ISP's servers and its customers. Defendants knew or should have known that their UBE was harming Verizon and that Verizon would bring suit against them where Defendants' spam caused Verizon the greatest injury. When a business directs UBE advertising of its products to a Virginia ISP and causes a tort within Virginia, the business tortfeasor is purposefully availing itself of the laws of Virginia and thereby subjects itself to long-arm jurisdiction in Virginia within the contours of the Constitution.

*Verizon Online*, 203 F.Supp.2d at 604. In finding venue to be appropriate in Virginia, the district court noted that substantial part of the events giving rise to the action requirement of the venue statute was fulfilled where the gravamen of the complaint involves millions of messages directed to and through servers located in Virginia. *Id.* at 623. Specifically, the Court found that a substantial portion of the defendants' actions giving rise to the claims occurred in Virginia and harmed property in Virginia and that

"[a]lthough [d]efendants' conduct may have originated in Michigan, under Virginia's long-arm statute [d]efendants' transmission of UBE to and through Verizon's Virginia computers constitutes a 'use' of those servers which in turn constitutes an act within the Commonwealth." *Id.*

The remaining cases relied upon by Mr. Savarese in support of his argument that directing communications into a jurisdiction is sufficient to establish venue in that jurisdiction involve voluntary actions by the venue-challenging defendant to establish a new business relationship with a party located in that jurisdiction or fraudulently induce that party to act. *See, e.g., U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.,* 241 F.3d 135, 153 (2nd Cir.2001) (communications directed to plaintiff in the Southern District of New York in effort to induce plaintiff into entering charter agreement with defendant were sufficient to confer venue in Southern District of New York over claims involving charter agreement and related negotiations regardless of whether communications first passed through broker in Connecticut); *Vishay, Intertechnology, Inc. v. Delta International Corp.,* 696 F.2d 1062, 1065–66 (4th Cir.1982) (finding intentional telephonic and written communications directed to plaintiff within subject jurisdiction in effort to induce plaintiff to enter into business contract constituted tortious conduct within the jurisdiction and were sufficient to establish personal jurisdiction over defendant for state law based claims of unfair business practices, interference with contractual relations and abuse of process arising from the communications); *Murphy v. Erwin–Wasey, Inc.,* 460 F.2d 661, 664 (1st Cir. 1972) ("Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to *the injury of a resident of that state,* he has, for [personal] jurisdictional purposes, acted within that state.") (emphasis added); *F.C. Investment Group, L.C. v. Lichtenstein,* 441 F.Supp.2d 3, 11–12 (D.D.C.2006) (venue was appropriate in District of Columbia where defendant directed communications to plaintiff in the District of Columbia with purpose of furthering scheme to defraud plaintiff); *Sacody Technologies, Inc. v. Avant, Inc.,* 862 F.Supp 1152 (S.D.N.Y.1994) (finding venue appropriate over Massachusetts business and its agent in Southern District of New York in action involving confidentiality agreement where agent initiated contact with New York company, discussed confidentiality agreement during telephone calls and facsimiles to New York business and faxed executed confidentiality agreement to New York). Under these cases, venue would be appropriate in West Virginia if Allstate or its agents directed communications to Mr. Savarese in West Virginia in an effort to form a new business relationship or to fraudulently induce Mr. Savarese to act in West Virginia to his detriment. However, those are not the facts with which we are presented and are not analogous to the situation with which we are presented where Mr. Savarese's actions caused the communications to be directed to his attorney in West Virginia. At all times pertinent hereto, Mr. Savarese was a resident of Ohio.

 The sole support in the Complaint filed in the Circuit Court of Ohio County for Mr. Savarese's claim that venue and jurisdiction are appropriate in West Virginia is the allegation that "Allstate, through its agents, employees and representatives, Defendants Jozsa, Carter, and Hill, adjusted plaintiff's claims in West Virginia by telephoning plaintiff's counsel and mailing correspondence to plaintiff's counsel located in Wheeling, Ohio County, West Virginia." Thus, the crux of Mr. Savarese's argument is that he retained an agent in West Virginia to pursue his claims under this contract with Allstate, directed Allstate to communicate with his agent in West Virginia and by Allstate and its agents communicating with his agent as required under his pre-existing Ohio contract, West Virginia is an appropriate venue in which to resolve his claims. We find this argument unpersuasive. While it is true that an attorney serves as an agent of a client, *see e.g., May v. Seibert,* 164 W.Va. 673, 680, 264 S.E.2d 643, 646 (1980) ("Rules of ethics declare that a lawyer is an agent of his client. It is the client's cause and decision that should prevail."), where the agent's acts are not at issue, the mere presence of the agent in a jurisdiction should not be the sole foun-

dation to support venue in that jurisdiction. Indeed, a fundamental tenet of agency law is that the principal is liable for the acts of the agent. Where the acts of the agent are not at issue in determining liability, the location of the agent is not relevant to a venue determination. As noted by Appellees in response to Mr. Savarese's argument that his bad faith claim arose upon his attorney's receipt of communications that medical payments had been refused, the claim belongs to Mr. Savarese, an Ohio resident, not his attorney. Allstate owed a contractual obligation to Mr. Savarese, not his attorney. Until Mr. Savarese was aware that the payment has been denied and incurred damages as a result, he had no claim arising from the refused payment. His attorney merely served as a conduit of the denial information to him, much as the Connecticut brokers served as conduits of information in *U.S. Titan, supra.* We agree with the circuit court that a finding that the attorney's physical location is sufficient to satisfy the requirements of W. Va. Code § 56–1–1(c) would subject a defendant to claims in whatever venue in which a plaintiff decides to retain an attorney, regardless of the venue's connection to the claim itself.

Accordingly, we now hold that the retention by Mr. Savarese, an Ohio resident, of a West Virginia attorney to pursue medical payment claims under an Ohio insurance contract for an injury sustained in Ohio is insufficient to establish venue under W. Va. Code § 56–1–1(c) for a cause of action governed by Ohio law arising from the denial of payment of such medical claims where no party to the action is a West Virginia resident. Pursuant to West Virginia Code § 56–1–1(c) (2003), a nonresident plaintiff must establish that all or a substantial part of the acts giving rise to his or her claims occurred in West Virginia in order to establish that venue is appropriate in this state where no claims are asserted against a West Virginia resident. In an action arising from the failure to pay a nonresident plaintiff's medical payment claims arising under a contract of insurance entered into and governed by the law of another state, the nonresident plaintiff's retention of a West Virginia attorney and communications to that attorney in West Virginia that the medical payment claims

have been denied are insufficient, standing alone, to satisfy the requirements of West Virginia Code § 56–1–1(c)(2003).

In a final effort to support his argument that West Virginia has sufficient contacts with this action to support jurisdiction and venue, Mr. Savarese attached additional correspondence from Allstate involving West Virginia providers to both his Petition for Appeal and his Appeal Brief. However, these materials *were not* submitted to the circuit court, are not a part of the circuit court record and are not properly before this Court. As we recently stated in *Jackson v. Putnam County Board of Education,* 221 W.Va. 170, 178, 653 S.E.2d 632, 640 (2007) (*per curiam* ), "the parties have an obligation to 'make sure that evidence relevant to a judicial determination be placed in the record before the lower court' so that this Court may properly consider it on appeal. *West Virginia Department of Health and Human Resources ex rel. Wright v. Doris S.,* 197 W.Va. 489, 494 n. 6, 475 S.E.2d 865, 870 n. 6 (1996)." In *Powderidge Unit Owners Association v. Highland Properties,* 196 W.Va. 692, 700, 474 S.E.2d 872, 880 (1996), this Court clearly stated that "our review is limited to the record as it stood before the circuit court at the time of its ruling." *See also, Pearson v. Pearson,* 200 W.Va. 139, 145, 488 S.E.2d 414, 420, n. 4 (1997) ("This Court will not consider evidence which was not in the record before the circuit court."). As the neither the allegations set forth in the Complaint nor the materials submitted for consideration to the circuit court in ruling upon the motions to dismiss demonstrate that all or a substantial part of acts or omissions forming the basis of Mr. Savarese's claims occurred in West Virginia, this action was properly dismissed pursuant to W. Va.Code § 56–1–1(c)(2003).

## IV.

### CONCLUSION

For the reasons set forth herein, the Circuit Court of Ohio County's October 11, 2006, is affirmed. Communications directed to Mr. Savarese's West Virginia attorney are insuf-

ficient to satisfy the requirements of W. Va. Code § 56–1–1(c)(2003).

Affirmed.

STARCHER, J., dissenting.

(Filed Dec. 30, 2008)

I dissent because I believe that under *W.Va.Code*, 56–1–1(c), an insurance company's communications directed into West Virginia, and its communications with a West Virginia lawyer, in the resolution of a claim, are enough to confer subject-matter jurisdiction upon a West Virginia court in a lawsuit alleging the claim was mishandled.

The Allstate insurance policy at issue in this case contained $20,000.00 in first-party medical payments coverage. The appellant's West Virginia attorney (working from his Ohio County, West Virginia office) promptly and continuously submitted the appellant's numerous medical bills to Allstate for payment. Allstate addressed its correspondence to the attorney at his Ohio County, West Virginia office. The West Virginia attorney and Allstate also communicated via telephone. In these communications, Allstate intentionally, maliciously, and/or recklessly denied portions of the appellant's no-fault, first-party medical payments claims. Allstate provided little explanation for its denials in its communications, other than an abbreviated code for the denial.

Allstate's communications often directed the appellant's West Virginia attorney to secure additional information, documentation, records and/or bills from the appellant's West Virginia medical providers. The correspondence also asked the West Virginia attorney to secure authorization for Allstate to obtain the release of protected medical information from those West Virginia medical providers. Allstate also sometimes sent carbon copies of the correspondence directly to the appellant's medical care providers in West Virginia.

Allstate often sent to the West Virginia attorney at his West Virginia office checks for partial payment of the appellant's claims for medical bills. And, Allstate sent some partial payments directly to the appellant's medical care providers located in West Virginia.

The appellant filed his lawsuit in West Virginia alleging that Allstate had acted in bad faith, in West Virginia, in resolving his insurance claim, because many of the actions that will support that claim occurred in, or were directed toward, West Virginia. Allstate filed a motion to dismiss the appellant's complaint for, among other reasons, lack of subject matter jurisdiction under *W.Va.Code*, 56–1–1(c) [2003]. That statute, which was repealed in 2007, formerly stated that:

[A] nonresident of the state may not bring an action in a court of this state unless all or a substantial part of the acts or omissions giving rise to the claim asserted occurred in this state[.]

The appellant argues that the circuit court erred in dismissing the appellant's claims by finding that a "substantial part" of the appellees' acts or omissions, which gave rise to the appellant's cause of action, did not occur in West Virginia. I believe that the circuit court and the majority opinion incorrectly found that, under *W.Va.Code*, 56–1–1(c) [2003], an out-of-state defendant's communications or correspondence, in furtherance of a breach of a contract or of a tortious act, and directed to recipients in West Virginia, does not constitute an act or omission within West Virginia sufficient to confer jurisdiction upon a West Virginia court over the plaintiff's claims. Let me explain.

The scope of subject matter jurisdiction in the circuit courts of this State is very broad. The subject matter jurisdiction of the circuit courts is set forth in both the *West Virginia Constitution* and the *West Virginia Code.* The *West Virginia Constitution,* Article VIII, Section 6, states in part that the "[c]ircuit courts shall have original and general jurisdiction of all civil cases at law where the value or amount in controversy, exclusive of interests and costs, exceeds one hundred dollars unless such value or amount is increased by the legislature[.]" *W.Va.Code,* 51–2–2 reiterates this constitutional scope of jurisdiction, stating that the circuit courts, "except in cases confined exclusively by the Constitution to some other tribunal, have original jurisdiction of all matters at law where the

amount in controversy, exclusive of interest, exceeds three hundred dollars[.]"

The threshold standard by which the circuit courts of this State may exercise subject matter jurisdiction in a given case requires a showing that:

> ... 1) the court has the general power to grant the type of relief demanded under any circumstances; 2) the pleadings demonstrate that a set of facts may exist which could *arguably* invoke the court's jurisdiction; and 3) the allegations both with regard to the facts and the applicable law are of sufficient substance to require the court to make, in an adversary proceeding, a reasoned determination of its own jurisdiction.

*Eastern Associated Coal Corp. v. Doe*, 159 W.Va. 200, 210, 220 S.E.2d 672, 679 (1975). The appellant contends that he has a civil claim for monetary damages in excess of the jurisdictional minimums of the circuit courts of this State, and that he therefore can easily overcome the threshold burden for subject matter jurisdiction. The circuit court did not disagree, but rather found that the appellant could not meet the threshold burden established by our venue statute, *W.Va.Code,* 56–1–1(c) [2003].

At the time of the circuit court's 2006 ruling, *W.Va.Code,* 56–1–1(c) contained a limitation on the scope of the subject matter jurisdiction of the circuit courts to entertain the claims of non-resident litigants. Specifically, the 2003 variant of *W.Va.Code,* 56–1–1(c) limited jurisdiction to those claims where "all or a substantial part of the acts or omissions giving rise to the claim asserted occurred in this state[.]"

The appellant concedes that the scope of *W.Va.Code,* 56–1–1(c) regarding what is a "substantial" act or omission is undefined. However, citing to persuasive federal authority, I believe that the appellant is correct in arguing that the appellees' communications directed to West Virginia recipients were substantial acts sufficient to confer subject matter jurisdiction.

The federal courts have repeatedly addressed the question of the meaning of "substantial" in the context of jurisdiction. The federal venue statute, 28 U.S.C. § 1391(a)(2), provides that venue lies in any district "in which a *substantial part* of the events or omissions giving rise to the claim occurred[.]" (Emphasis added).

Congress adopted this statutory language in 1990 to open the federal venue statute to "the possibility that a claim may have arisen in more than one district[.]" *Hodson v. A.H. Robins Co.,* 528 F.Supp. 809, 814 (E.D.Va. 1981). The federal venue statute thereby greatly expanded the possible forums in which a plaintiff might choose to bring an action.[1] "[T]he plaintiff is not required to establish that his chosen venue 'has *the most* substantial contacts to the dispute; rather, it is sufficient that *a* substantial part of the events occurred [here], even if a greater part of the events occurred elsewhere.'" *Country Home Prods. v. Schiller–Pfeiffer, Inc.,* 350 F.Supp.2d 561, 568 (D.Vt.2004) (emphasis added, *citing Kirkpatrick v. Rays Group,* 71 F.Supp.2d 204, 212 (S.D.N.Y.1999)).

"[I]n determining whether events or omissions are sufficiently substantial to support venue ... a court should not focus only on those matters that are in dispute or that directly led to the filing of the action. Rather, it should review the entire sequence of events underlying the claim." *Mitrano v. Hawes,* 377 F.3d 402, 405 (4th Cir.2004) (citations omitted). *See also, Uffner v. La Reunion Francaise, S.A.,* 244 F.3d 38, 42 (1st Cir.2001) ("We look, therefore, not to a single 'triggering event' prompting the action, but to the entire sequence of events underlying the claim."); *First of Mich. Corp. v. Bramlet,* 141 F.3d 260, 264 (6th Cir.1998) ("Under § 1391(a)(2), we reiterate that the appropri-

---

1. The former venue statute, 28 U.S.C. 1391(a) [1988], provided that an action based on diversity of citizenship, like this one, could only be brought in the district "in which the claim arose." The federal venue statute was amended in 1990 "to make venue proper in any 'judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.'"

*Mitrano v. Hawes,* 377 F.3d 402, 405 (4th Cir. 2004). "Under the amended statute it is now absolutely clear that there can be more than one district in which a substantial part of the events giving rise to the claim occurred." 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3806 (1994).

ate forum for a case is any forum in which a substantial part of the events or omissions giving rise to the claim occurred."); *Lee v. Corrections Corp. of America,* 525 F.Supp.2d 1238, 1241 (D.Hawai'i 2007) (same).

"However, an event need not be a point of dispute between the parties in order to constitute a substantial event giving rise to the claim." *Uffner,* 244 F.3d at 43. For federal venue purposes, "[t]he proper question is whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts." *FC Investment Group LC v. Lichtenstein,* 441 F.Supp.2d 3, 11 (D.D.C.2006). *See also, Setco Enterprises Corp. v. Robbins,* 19 F.3d 1278, 1281 (8th Cir.1994) ("[W]e no longer ask which district among two or more potential forums is the 'best' venue . . . Rather, we ask whether the district the plaintiff chose had a substantial connection to the claim, whether or not other forums had greater contacts.").

Federal authorities make it clear that correspondence and phone calls to a forum in furtherance of a tortious act may be substantial enough to create venue within that forum. For instance, in *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.,* 241 F.3d 135, 153–54 (2nd Cir.2001), the court found that venue "may be satisfied by a communication transmitted to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action." *In accord, Sacody Techs., Inc. v. Avant, Inc.,* 862 F.Supp. 1152, 1157 (S.D.N.Y.1994). *See also, Bates v. C & S Adjusters, Inc.,* 980 F.2d 865, 868 (2nd Cir.1992) ("We conclude that receipt [within the district] of a collection notice is a substantial part of the events giving rise to a claim under the Fair Debt Collection Practices Act [to establish venue within that district]"); *New Life Brokerage Services, Inc. v. Cal–Surance Associates, Inc.,* 222 F.Supp.2d 94, 109–10 (D.Me.2002) (venue was proper in Maine because the defendant "directed communications to Maine"); *FC Investment Group LC v. Lichtenstein,* 441 F.Supp.2d at 12 ("Because the communications by Mr. Lichtenstein to Mr. Eisenberg in the District of Columbia

were a significant part of the sequence of events underlying the claims, venue is proper here."); *Gruntal & Co. v. Kauachi,* 1993 WL 33345, at *2 (S.D.N.Y. Feb.5, 1993) (venue proper in common-law fraud action based on telephone calls during which fraudulent representations were made, where one party to the calls was within the district during the calls).

The appellants argue that the numerous phone calls and letters directed by the appellees primarily to the appellant's attorney in West Virginia are sufficient to establish jurisdiction in a West Virginia court over the appellant's first-party insurance claims. The appellant repeatedly makes clear that these communications centered upon the appellant's attempt to resolve his first-party claims against his medical payments insurance coverage with Allstate, and that the communications were separate from the appellant's third-party claims over the accident in Ohio. The appellant asserts that the Allstate appellees' phone calls, letters and other communications to West Virginia repeatedly demonstrated that the appellees were breaching Allstate's insurance contract with the appellant, and were engaging in other tortious conduct.

Applying language of 28 U.S.C. § 1391(a)(2) that is similar to *W.Va.Code,* 56–1–1(c), federal courts have permitted phone calls, letters, and facsimile transmissions to or from a district to stand alone as a basis for establishing venue in that district. For instance, in *FC Investment Group v. Lichtenstein, supra,* the alleged wrongful acts occurred outside the District of Columbia, and involved companies in Illinois and Maryland. However, because the defendant had directed false communications to the plaintiff at an office located in the District of Columbia, and because the communications were "a significant part of the sequence of events underlying the claims," the case could be filed and proceed in the District of Columbia. 441 F.Supp.2d at 12. Likewise, in *U.S. Titan, supra,* the court found communications directed by a Chinese state-owned corporation to a broker in Connecticut, but later transmitted to the plaintiff in New York, sufficient to establish venue in New York. And in

*Sacody Technologies, supra,* the court found that the defendants' communications over the telephone, in facsimiles and in letters to the plaintiff in New York were sufficient to establish venue in New York, where the communications related to the negotiation of an agreement that was subsequently breached by the defendant.

The appellants also point out that mere communications have also been sufficient to establish personal jurisdiction over a defendant. In *Murphy v. Erwin–Wasey, Inc.,* 460 F.2d 661, 664 (1st Cir.1972), the court reasoned:

> We would be closing our eyes to the realities of modern business practices were we to hold that a corporation subjects itself to the jurisdiction of another state by sending a personal messenger into that state bearing a fraudulent misrepresentation but not when it follows the more ordinary course of employing the United States Postal Service as its messenger. Where a defendant knowingly sends into a state a false statement, intending that it should there be relied upon to the injury of a resident of that state, he has, for jurisdictional purposes, acted within that state.

(Citations omitted.) The court in *Murphy* went on to find that personal jurisdiction in Massachusetts over a New York-based defendant could be based on a series of phone calls and letters made to the plaintiff in Massachusetts. *Id.* Additional authorities can be found showing communications such as letters, telephone calls and e-mails generated in one state and received in another were sufficient to invoke personal jurisdiction over an out-of-state defendant that generated the communication. *See, e.g., Vishay Intertechnology, Inc. v. Delta Int'l Corp.,* 696 F.2d 1062 (4th Cir.1982) (three letters and five telephone calls to North Carolina sufficient to invoke personal jurisdiction over out-of-state defendant who directed those communi-

cations); *Verizon Online Services, Inc. v. Ralsky,* 203 F.Supp.2d 601, 613 (E.D.Va. 2002) ("spammer" who sent e-mails to millions of recipients could reasonably expect to be "haled into a court in any state" where the e-mails were received); *Workgroup Tech. Corp. v. MGM Grand Hotel, LLC,* 246 F.Supp.2d 102, 110 (D.Mass.2003) ("at least four telephone calls, five emails, and three faxes" to a forum sufficient to invoke personal jurisdiction of the forum).

Reading these authorities together, I think it is fair to conclude that communications related to a wrongful act and directed to a West Virginia lawyer in his West Virginia office are sufficient to confer jurisdiction upon a West Virginia court over those wrongful acts.

Of course, I recognize that the communications at issue in this case weren't directed to the appellant, but to the appellant's attorney in West Virginia. But it was Allstate's communications to the attorney that were both the substance of the appellant's cause of action, and the sole means by which the appellant discovered Allstate's allegedly tortious and wrongful acts, making it fair to ask whether a communication with an attorney is comparable to a communication with the client.

West Virginia law is clear that "a lawyer is an agent of his client." *May v. Seibert,* 164 W.Va. 673, 680, 264 S.E.2d 643, 646 (1980). As an agent of the client, the lawyer acts in the client's name and on his or her behalf. "An agent in the restricted and proper sense is a representative of his principal in business or contractual relations with third persons[.]" Syllabus Point 3, in part, *State ex rel. Key v. Bond,* 94 W.Va. 255, 118 S.E. 276 (1923). *In accord,* Syllabus Point 2, *Teter v. Old Colony Co.,* 190 W.Va. 711, 441 S.E.2d 728 (1994); Syllabus Point 3, *Thomson v. McGinnis,* 195 W.Va. 465, 465 S.E.2d 922 (1995).[2] Additionally, a lawyer has an ethical

2. In *State ex rel. Clark v. Blue Cross Blue Shield of West Virginia, Inc.,* 203 W.Va. 690, 714, 510 S.E.2d 764, 788 (1998), we offered additional authorities on the subject of agency:
> 3 Am.Jur.2d *Agency* § 1, at 509–10 (1986) ("The term 'agency' means a fiduciary relationship by which a party confides to another the management of some business to be transacted

in the former's name or on his account, and by which such other assumes to do the business and render an account of it. It has also been defined as the fiduciary relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act. Thus, the term

**134**

and professional duty to keep a client reasonably informed about the status of a matter, and to transmit communications with a client. *See* Rule 1.4, *West Virginia Rules of Professional Conduct.* Put simply, I believe that a communication directed to a client's lawyer may be considered as a communication to the client.

In applying the principles of these numerous authorities, it is clear that the majority opinion erred in finding that the appellees' communications to the appellant's attorney in the State of West Virginia, in furtherance of the appellees' allegedly wrongful conduct, were not substantial enough to establish subject matter jurisdiction under *W.Va.Code,* 56–1–1(c) [2003]. More specifically, the circuit court's holding, that "[a] mere communication to an attorney that a decision has been made, without more, cannot confer subject matter jurisdiction," was plainly wrong.

The numerous federal authorities cited above interpret statutory language analogous to that found in *W.Va.Code,* 56–1–1(c) [2003], and I believe that the majority opinion should have found them to be persuasive authority as to the meaning of the phrase "substantial part of the acts or omissions giving rise to the claim asserted occurred in this state." I would have issued a syllabus point holding that in determining whether acts or omissions are sufficiently substantial to support jurisdiction under *W.Va.Code,* 56–1–1(c) [2003], a court should not focus on only a single "triggering event," on those matters that are in dispute, or on matters that directly led to the filing of the action. Rather, the court should review the entire sequence of events underlying the claim. Furthermore, I

would have ruled that the jurisdictional requirement under *W.Va.Code,* 56–1–1(c) [2003] that "a substantial part of the acts or omissions giving rise to the claim asserted occur[ ] in this state" may be satisfied by a communication transmitted to or from West Virginia, given a sufficient relationship between the communication and the cause of action.

Considering the entire sequence of events underlying the appellant's claims, the appellees' communications were substantially related to some or all of the causes of action asserted by the appellant, and may therefore support a West Virginia court's assertion of subject matter jurisdiction under *W.Va.Code,* 56–1–1(c). I do not believe, under *W.Va.Code,* 56–1–1(c) that a court needed to find any one "triggering event" that prompted any of the appellant's causes of action in order to find jurisdiction in West Virginia. Appellee Allstate and its adjusters repeatedly directed correspondence and other communications to the State of West Virginia to purposefully and tortiously deprive the appellant of his entitlement to insurance proceeds; to tortiously cause the appellant to suffer severe emotional distress; to communicate to the appellant the appellees' intent to breach the subject insurance contract; and/or to prove to the appellant that Allstate negligently trained and supervised its adjusters. Jurisdiction could therefore be asserted by a West Virginia court over these claims by the appellant.

I therefore respectfully dissent.

'agency,' in its legal sense, always imports commercial or contractual dealings between two parties by and through the medium of another. In an agency relationship, ... the one who acts for and represents the principal, and acquires his authority from him, is known and referred to as an 'agent.' " (footnotes omitted)); 2A C.J.S. *Agency* § 4, at 552, 554–55 (1972) (stating that "[a]gency is succinctly defined as a relation created by an agreement between the parties; relationship between a principal and his agent; the representation of one called the principal by another called the agent in dealing with third persons; the relation resulting where one person authorizes another to act for him in business dealings with others," and defining agent as "one who acts for or in the place of another by authority from him; a person having express or implied authority to represent or act on behalf of another person who is called his principal; a person employed or authorized by another to act for him, or to transact business for him...." (footnotes omitted)); 1A Michie's Jurisprudence *Agency* § 2, at 666 (1993) ("An agent is one who represents another, called the principal, in dealings with third persons. He is one who undertakes some business or to manage some affair for another by authority of or on account of the latter and to render an account of it." (footnotes omitted)).